# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LUZ PIZARRO-CORREA,

**Plaintiff**,

v.

PUERTO RICO INTERNAL REVENUE
DEPARTMENT, *et al.*,

**Defendants.**

Civil No. 16-2598 (FAB)

## OPINION AND ORDER[1]

BESOSA, District Judge.

Plaintiff Luz Pizarro-Correa ("Pizarro") brought this action against the Puerto Rico Internal Revenue Department, also known as Departamento de Hacienda ("Hacienda"), the Commonwealth of Puerto Rico ("Commonwealth"), and Alberto Cardona-Crespo ("Cardona") (collectively "defendants") alleging violations of the Americans with Disabilities Act ("ADA"), and Title VII of the Civil Rights Act of 1964 ("Title VII"). Pizarro also invokes the supplemental jurisdiction of this Court to adjudicate her claims pursuant to Puerto Rico Law 44 ("Law 44"), P.R. Laws Ann. tit. 1, §§ 501 *et seq.*; Puerto Rico Law 115 ("Law 115"), P.R. Laws Ann. tit. 29, §§ 194 *et seq.*; and Puerto Rico Law 100 ("Law 100"), P.R. Laws Ann.

---

[1] Audrey Mulholland, a second-year student at American University Washington College of Law, assisted in the preparation of this Opinion and Order.

tit. 29, §§ 146 *et seq*. Defendants move to dismiss[2] Pizarro's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket No. 19.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motion to dismiss.

## I.   STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), defendants may move to dismiss an action for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555. In doing so, the Court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011). Although "the elements of a *prima facie* case may be used as a prism to shed light upon the

---

[2] Defendants filed a motion to dismiss on December 28, 2016. (Docket No. 12.) Two days later, defendants filed a motion for leave to correct *nunc pro tunc* the motion to dismiss because of "various mistakes" and "grammatical oversights." (Docket No. 17.) The Court granted this motion, permitting defendants to file a motion to dismiss *nunc pro tunc* on January 3, 2017. (Docket No. 19.) The motion to dismiss *nunc pro tunc* is now before the Court. Id. Accordingly, the initial motion to dismiss is moot. (Docket No. 12.)

plausibility of the claim," it is "not necessary to plead facts sufficient to establish a *prima facie* case" in order to survive a motion to dismiss. Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). The *prima facie* analysis in a discrimination case is an evidentiary model, not a pleading standard. Id. at p. 51 ("the *prima facie* case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold."). A complaint that adequately states a claim may still proceed even if "recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 13 (internal quotation marks and citations omitted).

## II.   FACTUAL BACKGROUND

The Court takes the following facts as true, as pled in the complaint. (Docket No. 1.) Pizarro worked for Hacienda as a revenue collections officer for approximately five and a half years. Id. at p. 1. Pizarro "suffered from mental illness" and was diagnosed with major severe depression and bipolar disorder. Id. Hacienda received notice of Pizarro's mental health condition on or about September 4, 2013, when she submitted medical notes from her psychologist to her supervisor.[3] Id. at p. 2. Pizarro

---

[3] Pizarro states only that she provided her employer with "medically certified excuses from work." (Docket No. 1 at p. 2.) Pizarro does not specify the conduct or tasks that the medical notes purportedly excused.

claims one of her supervisors, Carmen Mercado, was fully aware of her medical conditions.  Id.

Pizarro avers that in 2015 defendant Cardona, a male coworker at the Arecibo office, made sexually explicit and derogatory comments to Pizarro.  Id. at p. 5.  Cardona's unwelcomed comments included telling Pizarro to dance on a stripper pole.[4]  Id.  Pizarro informed her supervisor, Sylvia Serrano, of Cardona's remarks, but Hacienda took no action.  Id.  Instead, Serrano allegedly notified Cardona of Pizarro's intention to file a sexual harassment complaint so that Cardona could pre-emptively file his own complaint against Pizarro.  Id.  Subsequently, Cardona filed a sexual harassment complaint against Pizarro.  Id.  While Hacienda investigated Cardona's claim, Pizarro was transferred to the Bayamon office.  Id.  Meanwhile, Pizarro's sexual harassment complaint against Cardona was not investigated.  Id.

Pizarro alleges that her transfer to the Bayamon office exacerbated her mental health condition; consequently, she requested a return to the Arecibo office as an accommodation.  Id. at p. 6.  During Pizarro's time at the Bayamon office, Hacienda allegedly shared her mental health condition with another co-worker who looked for an opportunity to discredit her and remove

---

[4] The complaint states that Cardona told Pizarro to "enviar al tubo a bailar," which the complaint translates into English as telling her to go "strip-pole dancing."  (Docket No. 1 at p. 5.)

her from the workplace. Id. Pizarro was suspended without pay when a co-worker informed Hacienda that she was afraid to share the breakroom with Pizarro during meals. Id. While at the Bayamon office, Pizarro applied for long-term disability benefits through MetLife insurance because she needed "periodic medical evaluations and rehabilitation" for her illness. Id. at p. 7. MetLife notified Hacienda that her application was accepted on November 11, 2015. Id.

Hacienda completed the sexual harassment investigation regarding Cardona's accusations against Pizarro on October 8, 2016. Id. The report "exonerated the plaintiff of the alleged harassment" charge. Id. at p. 6. Pizarro, however, was not notified of this outcome until after her employment was terminated.

On December 22, 2015, Pizarro received notification of her dismissal from Hacienda, effective retroactively on October 11, 2015.[5] Id. Hacienda premised its decision to terminate Pizarro's employment on the acceptance of her application for long-term disability benefits. Id. at p. 12.

On December 30, 2015, plaintiff filed a second claim with the Equal Employment Opportunity Commission ("EEOC") alleging

---

[5] The Court is relying upon the termination date provided in the factual allegations section of the complaint. The first page of the complaint, however, states that Pizarro's termination date was March 7, 2016. (Docket No. 1 at p. 1.)

disability discrimination by Hacienda.[6]  Id. at p. 3.  On March 30,

2016, Pizarro filed a third and final claim with the EEOC alleging

sex discrimination, disability discrimination, and retaliation by

Hacienda.[7]  Id.  The EEOC closed all of Pizarro's claims in June

2016, and issued three right-to-sue letters.  (Docket No. 1-3.)

Pizarro filed her complaint on September 7, 2016.  (Docket No. 1.)

## III. DISCUSSION

### A.  Individual Liability Pursuant to the ADA, Title VII, and Puerto Rico Law

Defendants contend that Cardona cannot be sued in his

individual capacity pursuant to the ADA.  (Docket No. 19 at p. 8.)

Pizarro counters that the only claims brought against Cardona are

for gender discrimination and for the creation of a hostile working

environment.[8]  (Docket No. 20 at p. 1.)  Well-established precedent

establishes that there is no individual liability pursuant to the

ADA or Title VII.  Courts within this district and sister circuits

have concluded that the language of the ADA "does not provide for

---

[6] Pizarro filed her first EEOC claim on March 24, 2015, claiming sexual discrimination and retaliation by Hacienda.  (Docket No. 1 at p. 3.)

[7] The EEOC determined that "based upon its investigation, the EEOC is unable to conclude that the information obtained established violations of the statutes." (Docket No. 1-3.)  Furthermore, the EEOC stipulated that its determination "does not certify that the respondent is in compliance with the statutes."  Id.

[8] The complaint merely alleges that Cardona sexually harassed Pizarro and created a hostile work environment.  (Docket No. 1 at p. 4.)  Because Pizarro does not enumerate the precise statutory claims brought against Cardona, in an abundance of caution, the Court will consider individual liability pursuant to all claims.

individual liability, but only for employer liability." <u>Cardona-Roman v. Univ. of P.R.</u>, 799 F. Supp. 2d 120, 128 (D.P.R. 2011) (Dominguez, J.); <u>see</u> <u>also</u> <u>Spiegel v. Schulmann</u>, 604 F.3d 72 (2d Cir. 2010); <u>Wathen v. Gen. Elec. Co.</u>, 115 F.3d 400 (6th Cir. 1997); <u>Mason v. Stallings</u>, 82 F.3d 1007 (11th Cir. 1996). The First Circuit Court of Appeals has held that there is "no individual employee liability under Title VII" because individuals are not encompassed within the stautory definition of employer. <u>Fantini v. Salem State College</u>, 557 F.3d 22, 30 (1st Cir. 2009).

Decisions regarding the scope of liability pursuant to the Puerto Rico state law claims mirror federal case law. Law 44 was modeled after the ADA, "and as the ADA does not provide for individual liability, neither should Law 44." <u>Cardona-Roman</u>, 799 F. Supp. 2d at 131 (D.P.R. 2011) (Dominguez, J.) <u>(citation omitted)</u>. Law 115, which prohibits retaliation in the workplace, likewise contains no provision imposing individual liability. <u>Torres v. House of Representatives of the Commonwealth of P.R.</u>, 858 F. Supp. 2d 172, 193 (D.P.R. 2012) (Gelpi, J.) ("With regards to personal supervisor liability under Puerto Rico's statute prohibiting retaliation in the workplace, Law 115, the Puerto Rico Court of Appeals found that it stems from the text of the act that the sanctions imposed therein are only against the employer, and

thus, the statute contains no provision imposing personal liability.")

Law 100 by contrast, allows individuals to be sued in their personal capacity only if they are "employees of a covered entity within [its] scope." Ortiz-Rodriguez v. Consorcio Del Noroeste, Case No. 14-1529, 2016 WL 1255694, at *13 (D.P.R. Mar. 29, 2016) (Gelpi, J.), *appeal dismissed* (Aug. 5, 2016). Law 100 was enacted to expand protection from discrimination to employees in the private sector. Huertas-Gonzalez v. Univ. of P.R., 520 F. Supp. 2d 304, 314 (D.P.R. 2007) (Dominguez, J.). Accordingly, Law 100 does not apply to employees of the Commonwealth or its instrumentalities that do not function as businesses or private entities. See Hernandez-Payero v. Puerto Rico, 493 F. Supp. 2d 215, 233 (D.P.R. 2007) (Besosa, J.) (concluding that "since the Puerto Rico Police Department is an arm of the state and does not function as a business or private entity, Law 100 is not applicable."); Alberti v. Univ. of P.R., 818 F. Supp. 2d 452, 481 (D.P.R. 2011), *aff'd sub nom,* Alberti v. Carlo-Izquierdo, 548 F. App'x 625 (1st Cir. 2013) (holding that Law 100 does not apply to "the arms of the state and/or individual defendants working therein"). Hacienda, as the tax collection agency for Puerto Rico, is an instrumentality of the Commonwealth that falls beyond the purview of Law 100. Because Cardona is employed by an entity that

is not covered pursuant to Law 100, he cannot be held individually liable.  Because none of the asserted causes of actions could subject Cardona to individual liability, all claims against Cardona are **DISMISSED**.

**B.   Eleventh Amendment Immunity: ADA and Puerto Rico State Law Claims**

Defendants next contend that the Eleventh Amendment bars all ADA and Puerto Rico state law claims in federal court against the Commonwealth and Hacienda.  (Docket No. 19 at pp. 14-18.)  The Eleventh Amendment "prevents private individuals from bringing suit against non-consenting states."[9]  Garcia-Hicks v. Vocational Rehab. Admin., 25 F. Supp. 3d 204, 209 (D.P.R. 2014) (Besosa, J.) (citing Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001)).  The immunity established by the Eleventh Amendment also serves to "protect the arms or *alter egos* of the state."  Garcia-Hicks, 25 F. Supp. 3d at 210 (citing Ainsworth Aristocratic Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d 1034, 1036 (1st Cir. 1987)).  The Commonwealth is considered a state for the purpose of Eleventh Amendment immunity.  Metcalf & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 939 n.3 (1st Cir. 1993).  Hacienda, an instrumentality of the Commonwealth, qualifies as an

---

[9] The Eleventh Amendment states that:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

arm of the state.  See Vaqueria Tres Monjitas, Inc. v. Irizarry,
587 F.3d 464, 477 (1st Cir. 2009) ("An administrative arm of the
state is treated as the state itself for the purpose of the
Eleventh Amendment, and it thus shares the same immunity."); Fin.
of Am. Reverse LLC v. Almodovar-Figueroa, Civil No. 16-3017, 2017
WL 2656108, at *3 (D.P.R. June 30, 2017) (Delgado-Colon, J.)
(stating Hacienda is an instrumentality of the Puerto Rico
government).

        There are numerous exceptions to the constitutional
grant of sovereign immunity.  For instance, the Eleventh Amendment
does not bar suit in federal court when:  (1) the state consents
to suit; (2) the state waives its immunity by statute; (3) Congress
abrogates state immunity; or (4) constitutional imperatives
warrant a state being subject to suit.  Metcalf & Eddy, Inc., 991
F.2d at 938 (citations omitted).  The Supreme Court has provided
an additional route to relief in federal court pursuant to the Ex
Parte Young doctrine, which precludes states from invoking the
Eleventh Amendment as a defense "where prospective injunctive
relief, not involving damages or property transfer, is sought
against **named state officials** for a violation of federal law."
Neo Gen Screening, Inc. v. New England Newborn Screening Program,
187 F.3d 24, 28 (1st Cir. 1999) (citing Idaho v. Coeur d'Alene

Tribe of Idaho, 521 U.S. 261, 276-77 (1997) (emphasis added)); see
also Ex Parte Young, 209 U.S. 123 (1908).

Pizarro claims that defendants discriminated against her
by failing to accommodate her disability reasonably in violation
of the ADA.  (Docket No. 1 at p. 11.)  Although Pizarro fails to
specify the sections of the ADA from which her claims arise,
employment discrimination is prohibited by Title I.  See 42 U.S.C.
§§ 12111-12117.  While Congress fully intended to abrogate
sovereign immunity when enacting the ADA, the Supreme Court
concluded in Garrett that "Title I of the ADA was not a valid
congressional abrogation" and that Eleventh Amendment immunity
still applied.  Garcia-Hicks, 25 F. Supp. 3d at 210 (citing
Garrett, 531 U.S. at 374)).  Consequently, Pizarro's Title I claim
pursuant to the ADA is barred against the Commonwealth and Hacienda
by the Eleventh Amendment.

In response to defendants' motion to dismiss for
Eleventh Amendment sovereign immunity, Pizarro waived her claim
for monetary compensation pursuant to the ADA, making clear that
she requests only injunctive relief.  (Docket No. 20 at p. 10.)
An action seeking injunctive relief pursuant to the ADA can be
sustained only as to named state officials.  Melendez-Gonzalez v.
Oficina de Administracion de los Tribunales, 218 F. Supp. 2d 227,
231 (D.P.R. 2002) (Laffitte J.) ("Any claims for injunctive relief

may only be brought against the named individual defendants in their official capacity."). Because Pizarro has not named any state official purportedly responsible for violations of the ADA, all ADA claims are **DISMISSED**.

With regard to the causes of action stemming from Puerto Rico law, the Commonwealth has not waived sovereign immunity. Pagan v. Puerto Rico, 991 F. Supp. 2d 343, 347 (D.P.R. 2014) (Casellas, J.). The First Circuit Court of Appeals has held that the Commonwealth "has not waived its Eleventh Amendment sovereign immunity under Law 44 because there is no specific language in the statute indicating that Puerto Rico intended to make itself subject to [. . .] federal court for disability-based employment discrimination." Torres v. Junta de Gobierno de Servicios de Emergencia, 91 F. Supp. 3d 243, 255 (D.P.R. 2015) (Gelpi, J.) (citing Acevedo Lopez v. Police Dep't of P.R., 247 F.3d 26, 29 (1st Cir. 2001)). Furthermore, various judges within this district have held on numerous occasions that sovereign immunity shields the Commonwealth and its instrumentalities from Law 100 and Law 115 claims in federal court. See Lugo-Matos v. P.R. Police Dep't, Civil No. 14-1839, 2016 WL 742912, at *6 (D.P.R. Feb. 24, 2016) (Garcia-Gregory, J.); Vizcarrondo v. Bd. of Trs. of Univ. of P.R., 139 F. Supp. 2d 198, 208 (D.P.R. 2001) (Dominguez, J.); Dogson v. Univ. of P.R., 26 F. Supp. 2d 341, 343 (D.P.R. 1998) (Dominguez,

J.) (holding that a Law 100 discrimination claim based on sex is barred by the Eleventh Amendment).

In sum, the Eleventh Amendment bars claims pursuant to Law 44, Law 100, and Law 115 in federal court against the Commonwealth and Hacienda, as an instrumentality. Accordingly, Pizarro's claims stemming from Puerto Rico law are **DISMISSED**.

### C.    **Title VII Claims**

Pizarro's remaining claims are for gender discrimination, hostile work environment, and retaliation in violation of Title VII.[10] Defendants contend that Pizarro has failed to allege sufficient facts plausibly to sustain any of these claims.

### 1.    **Gender Discrimination**

Pizarro claims that defendants discriminated against her on the basis of her gender. In support of this claim, she offers a number of factual allegations: (1) her employers ignored her sexual harassment claims against Cardona while selectively choosing to investigate Cardona's claims against her; (2) Hacienda withheld the results of the investigation, which absolved her of wrongdoing, until after terminating her

---

[10]    These claims survive the Eleventh Amendment barrier because Congress abrogated sovereign immunity pursuant to Title VII by expressly authorizing actions for damages against a state. See Lipsett v. Univ. of P.R., 864 F.2d 881, 885 (1st Cir. 1988).

employment; and (3) Cardona remained at the Arecibo office while Pizarro was transferred to the Bayamon office. (Docket No. 1 at pp. 11-12.) These allegations, Pizarro argues, assert a gender discrimination claim predicated on the disparate treatment of Pizarro and Cardona, her male co-worker.

In relevant part, Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). Where direct evidence of gender discrimination is lacking, claims are subject to the burden shifting analysis articulated by the Supreme Court in McDonnell Douglas. Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 470 (1st Cir. 2010); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). According to this analysis, the plaintiff shoulders the initial burden of establishing a *prima facie* case of gender discrimination. Lockridge, 597 F.3d at 470.

The elements of a *prima facie* gender discrimination claim depend on the nature of the asserted claim. A claim founded upon disparate treatment requires the plaintiff to allege that: "(1) she is a member of a protected class, (2) she possessed the necessary qualifications and adequately performed her job, (3) she suffered an adverse employment action, and (4) similarly situated

members outside her protected class were treated more favorably."

Adkins v. Atria Senior Living, Inc., 113 F. Supp. 3d 399, 412 (D.

Me. 2015) (citing McDonnell Douglas Corp., 411 U.S. at 793).

Plaintiff need only demonstrate "a small showing that is not

onerous and is easily made." Che v. Mass. Bay Transp. Auth., 342

F.3d 31, 38 (1st Cir. 2003) (internal quotation marks and citations

omitted).

Having reviewed the complaint, the Court is

satisfied that Pizarro has adequately alleged a *prima facie* gender

discrimination claim pursuant to Title VII. First, it is

undisputed that being a woman, Pizarro is a member of a protected

class under Title VII which explicitly guards against

discrimination in the workplace on the basis of sex. 42 U.S.C. §

2000e-2. Second, Pizarro's five-and-a-half-year tenure at

Hacienda suggests she possessed the necessary qualifications for

her former job. Third, (1) her involuntary transfer to the Bayamon

office and (2) her termination constitute an adverse employment

action. See Hernandez-Torres v. Intercont'l Trading, Inc., 158

F.3d 43, 47 (1st Cir. 1998) (stating that adverse employment

actions include "demotions, disadvantageous transfers or

assignments, refusals to promote, unwarranted negative job

evaluations, and toleration of harassment by other employees").

Finally, Pizarro has alleged facts that, if proven, suggest that she was treated differently than Cardona, a male coworker.  For example, Pizarro's sexual harassment claim against Cardona was not investigated while Cardona's claim against Pizarro was investigated.  Furthermore, Pizarro had to transfer offices pending the investigation of Cardona's allegations against her, yet Cardona was never made to transfer offices.  (Docket No. 1 at p. 12.)

At this juncture, the question before the Court is not whether Pizarro will ultimately prevail on her Title VII gender discrimination claim.  Rather, at issue is whether Pizarro has alleged sufficient facts to raise her right to relief above the speculative level.  The Court is satisfied that she has. Accordingly, the Court **DENIES** defendants' motion to dismiss Pizarro's gender discrimination claim against Hacienda and the Commonwealth.

### 2.  **Hostile Work Environment Claim**

Title VII prohibits sex-based discriminatory employment practices that create a hostile work environment, often referred to as sexual harassment.  See Lockridge, 597 F.3d at 473 (internal quotation marks and citations omitted).  To establish a claim of a hostile work environment, a plaintiff must demonstrate that:  (1) he or she is a member of a protected class; (2) he or

she was subject to unwelcome harassment; (3) the harassment occurred as a result of class membership; (4) the harassment was so severe and pervasive it altered the conditions of employment and created an abusive work environment; (5) the conduct complained of was objective and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim perceived it to be so; and (6) a basis for employer liability exists. Cerezo-Martin v. Agroman, 213 F. Supp. 3d 318, 326 (D.P.R. 2016) (Besosa, J.) (citing Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 39 (1st Cir. 2007)).

When a hostile work environment claim is premised on sexual harassment, courts should avoid distinguishing sexually oriented conduct from instances of unequal treatment and instead consider the aggregate of all claims. See O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001). In assessing the severity and impact of the harassment, courts consider the totality of the circumstances, "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, whether it is a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." Davila v. Potter, 550 F. Supp. 2d 234, 240 (D.P.R. 2007) (Besosa, J.) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), Pizarro is not required to plead every element of a *prima facie* case, nor must she identify every incident of sexual harassment. Polo-Echevarria v. Centro Medico del Turabo, Inc., 949 F. Supp. 2d 332, 339 (D.P.R. 2013) (Besosa, J.) (citations omitted). She must, however, plead sufficient facts to make relief under a hostile work environment claim plausible. Id. Pizarro claims defendant Cardona's sexually explicit remarks, his false accusation of sexual harassment against her, Hacienda's failure to investigate her sexual harassment claim, and her involuntary transfer to the Bayamon office all contributed to the creation of a hostile work environment. (Docket No. 1 at pp. 5-6.) Pizarro additionally claims that defendants created a hostile work environment when they shared private information regarding her mental health with other coworkers. Id. at p. 12.

Defendants contend that the allegations contained in the complaint are not severe or pervasive. Defendants claim Pizarro's allegations are more akin to work "discomfort" and result from "the genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Id. at p. 13. The Court disagrees with this assessment. While a "mere offensive utterance" does not generally rise to the level of creating a hostile work environment, Pizarro's

allegations extend beyond a single comment. Pizarro's allegations in the complaint include multiple instances of degrading commentary from Cardona, failure of her supervisors to investigate her claims of sexual harassment, and the consequent involuntary transfer to a new office. When considered in the aggregate, these allegations suffice to make a plausible hostile work environment claim. See O'Rourke, 235 F.3d at 730 (holding that "incidents of nonsexual conduct - such as work sabotage, exclusion, denial of support, and humiliation – can in context contribute to a hostile work environment"). Accordingly, the Court **DENIES** defendants' motion to dismiss the hostile work environment claim pursuant to Title VII.

### 3. Retaliation

Pizarro's remaining claims involve retaliation in violation of Title VII.[11] Title VII prohibits employers from taking retaliatory action against an employee who opposes any practice or act made unlawful by it. See 42 U.S.C. § 2000e-3. A plaintiff can establish a claim for retaliation pursuant to Title VII by showing that (1) he or she engaged in a protected activity; (2) he or she suffered an adverse employment action; and (3) there was a

---

[11] In this case, any retaliation claim pursuant to the ADA is also barred by Eleventh Amendment sovereign immunity because it is premised on employment discrimination arising under Title I. See Diaz v. Dep't of Educ., 823 F. Supp. 2d 68, 74 (D.P.R. 2011) (Garcia-Gregory, J.).

causal connection between the adverse action and protected activity. See Salgado-Candelario v. Ericsson Caribbean, Inc., 614 F. Supp. 2d 151, 178 (D.P.R. 2008) (Delgado-Colon, J.) (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004)). Protected activity encompasses any action "taken to protest or oppose statutorily prohibited discrimination." Fantini, 557 F.3d at 32. When a plaintiff argues retaliation through indirect evidence, the McDonnell Douglas burden-shifting framework is again applied. Davila, 550 F. Supp. 2d at 241. The plaintiff must first establish a *prima facie* claim before the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. Id. The burden then shifts back to the plaintiff to provide evidence that "the offered reason is pretext cloaking the employer's retaliatory animus." Vazquez-Robles v. CommoLoco, Inc., 186 F. Supp. 3d 138, 155 (D.P.R. 2016) (Besosa, J.).

There is no question that Pizarro has adequately alleged that she engaged in protected activity by filing an internal sexual harassment complaint and three EEOC claims in March 2015, December 2015, and March 2016. See Mariana-Colon v. Dep't. of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 223 (1st Cir. 2007) (determining that contacting human resources and the EEOC regarding alleged discrimination was "undoubtedly" protected

activity).  Pizarro states that shortly after filing her first EEOC claim on March 24, 2015, she was subject to adverse employment action in the form of her employer's failure reasonably to accommodate her disability, suspension from work, and eventual termination from employment.  (Docket No. 1. at p. 12.)  Pizarro further claims that defendants' legitimate and non-retaliatory reason for her termination – that she was granted long-term disability benefits from MetLife – is a pretext for unlawful retaliation.[12]  Id.  While Pizarro has satisfied the first two requirements in establishing a retaliation claim, she has failed to allege a causal connection between the two sufficiently.

The only argument Pizarro submits linking the protected activity and adverse employment action is through a temporal nexus, claiming the adverse actions occurred "shortly after" her initial EEOC filing.  (Docket No. 1 at p. 12.) Establishing causation through temporal proximity requires that the events occurred in a very close timeframe.  Echevarria v. AstraZeneca, LP, 133 F. Supp. 3d 372, 401 (D.P.R. 2015) (Delgado-Hernandez, J.).  Courts have held adverse employment actions occurring only three months after the protected activity to be

---

[12] Pizarro at one point in the complaint also asserts that she was terminated as a result of exercising her right to apply for long-term disability benefits. (Docket No. 1 at p. 9.) Pizarro cites no authority, however, establishing that an application for long-term disability benefits is considered a protected activity when evaluating a claim of retaliation.

insufficient to establish a retaliatory motive.  See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005).

Here, an analysis of the alleged temporal nexus connecting the protected activity to alleged adverse employment action is not feasible.  Pizarro fails to articulate when all of the protected activities and adverse employment actions occurred. It is unclear to the Court when Pizarro filed her internal sexual harassment complaint, when Hacienda denied her request to be transferred back to the Bayamon office, and when she was suspended. An adverse employment action cannot precede the protected activity.  The only dates Pizarro provides to the Court are for the EEOC filings and termination.  The earliest date in which Pizarro alleges she engaged in protected activity is March 24, 2015, the date of the first EEOC complaint.  Her termination of employment occurred approximately nine months following the EEOC complaint.  The nine-month delay between the protected activity and adverse action is insufficient to establish a causal connection.  More information, including the date in which Pizarro filed the internal complaint with Hacienda, is required to evaluate more fully the causal connection between the protected activity and adverse action.  Accordingly, the Court **GRANTS** defendants

12(b)(6) motion regarding to plaintiff's retaliation claim. This claim is **DISMISSED without prejudice**.

## IV.  CONCLUSION

For the reasons set forth above, the Court **DENIES** defendants' 12(b)(6) motion with respect to plaintiff's Title VII gender discrimination and hostile work environment claims. The Court **GRANTS** defendants' motion to dismiss all claims against Cardona, and **GRANTS** defendants' motion to dismiss all ADA and Puerto Rico state law claims. Those claims are **DISMISSED WITH PREJUDICE.** The Court also **GRANTS** defendants' 12(b)(6) motion with respect to plaintiff's Title VII retaliation claim. This claim is **DISMISSED WITHOUT PREJUDICE**.

Pursuant to Judge Swain's order in Case No. 17-03283-LTS (docket number 617), plaintiff's Title VII gender discrimination and hostile work environment claims are stayed without prejudice to an application for further relief from stay.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 31, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE